UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAN HARRIS, et al. individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>AUXILIUM PHARMACEUTICALS, INC.,<br><br>Defendant. | §<br>§<br>§<br>§<br>§   CIVIL ACTION NO. 4:07-3938<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Partially Dismiss or, in the Alternative, For Partial Summary Judgment (Doc. No. 37). After considering the parties' filings and the applicable law, the Court finds that Defendant's Motion should be granted in part and denied in part.

### I. BACKGROUND

Plaintiffs Jan Harris and Kathy Parks allege that their former employer, Defendant Auxilium Pharmaceuticals, Inc., violated Title VII, the Equal Pay Act ("EPA"), and the Fair Labor Standards Act ("FLSA"). Plaintiff Harris began working for Auxilium on January 29, 2003. (Def.'s Mot. to Dismiss, Ex. E.) On June 12, 2007, she took a leave of absence (*id.* at Ex. A ¶ 4), and later resigned from the company on October 2, 2007. (*Id.* at Ex. F.) Plaintiff Parks began working at Auxilium on a part-time basis on December 30, 2002. (*Id.* at Ex. G.) She became a full-time employee on September 1, 2003. (*Id.* at Ex. H.) On January 10, 2008, she was terminated for allegedly failing to perform her job duties. (Roberts Aff. ¶ 8.)

Defendant Auxilium is a specialty biopharmaceutical company that "targets patient populations with unmet medical needs and focuses on developing and marketing to urologists, endocrinologists, orthopedists and select primary care physicians." (*Id.* at ¶ 1.) Both Plaintiffs worked as Medical Sales Consultants ("MSCs") for the company. MSCs are responsible for selling Testim, Auxilium's primary product, which is a topical testosterone gel for treatment of hypogonadism. (*Id.*) The MSC position requires a four-year college degree and prior sales experience, with preference given to those who have worked in the pharmaceutical industry. (Def.'s Mot. to Dismiss, Ex. B.) The major responsibilities of an MSC include the following: regular office visits to targeted practitioners, hospitals, clinics and pharmacies, updates of all relevant tracking databases, completion and submission of reports, timely completion of expenses and paperwork, adherence to Auxilium and Pharma guidelines, and attendance at various meetings (both medical and company sponsored). (*Id.*) MSCs are given a "call list" of targeted physicians upon whom they are supposed to focus their efforts. (*Id.*)

Auxilium's "Performance and Development Evaluation Form" lists several criteria used to judge MSCs. (*Id.* at Ex. C.) These criteria include the following: "Uses EBS skills consistently and effectively while analyzing a study and utilizing it in a sales presentation; effectively incorporates approved and available third party proof sources in a sales discussion to support a promotional claim; demonstrates Auxilium's Strategic Selling Model consistently; implements company sales direction into each call; sells the features and benefits of Testim by utilizing good product knowledge and current company messaging." (*Id.*) The Field Coaching Report for MSCs includes "sales ability" as a performance measure. (*Id.* at Ex. D.)

As compensation, MSCs receive a base salary coupled with incentive compensation, contest award money, and stock options. (Roberts Aff. ¶ 8.) The MSC base salary is based in

part on the MSC's prior experience and in part on her geographic location. (*Id.*) Ultimately, MSC salaries are determined by the company's Regional Sales Directors, with input from Area Sales Directors and Human Resources. (*Id.*) The amount of incentive compensation and contest award money that MSCs receive is based on Auxilium's incentive compensation plans and contest rules. (*Id.* at ¶ 9.) MSCs do not work in an office. (*Id.* at ¶ 10.) MSCs are divided into regions, however, and their work is supervised by a Regional Sales Director. (*Id.*) Both Plaintiffs worked in the same region. (*Id.*)

## II. ANALYSIS

Defendant moves to dismiss Plaintiffs' EPA and FLSA claims. In the alternative, Defendant requests that the Court grant summary judgment on the claims. To dispose of this Motion, the Court is required to look beyond the pleadings to the affidavits and other extrinsic evidence submitted by the parties. The Court will therefore consider both of Defendant's arguments under FED. R. CIV. P. 56.

### A. Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving

party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### B. Equal Pay Act

The Equal Pay Act requires that men and women who perform equal work receive equal pay, unless a difference in pay is justified by reasons other than their gender. *Perales v. American Retirement Corp.*, No. Civ. A. SA-04-CA-0928, 2005 WL 2367772, at *4 (W.D.Tex. Sept. 25, 2005). The statute reads, in pertinent part:

> No employer having employees subject to any provision of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions....

29 U.S.C. § 206(d)(1).

In order to establish a prima face case under the EPA, Plaintiffs must demonstrate that they received less compensation than men working in the same "establishment" who performed substantially similar work. *Perales v. American Retirement Corp.*, 2005 WL 2367772 at *4 (citing *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir.), *cert. denied* 513 U.S. 919 (1994)). At the outset, Defendant argues that Plaintiffs have not established a prima facie case because they were paid more than the men in their sales region. The parties dispute whether

Plaintiff's establishment was their sales region or the larger sales area, which includes more male comparators.

The statute does not contain a specific definition of "establishment"; however, the Department of Labor defines the term as "a distinct physical place of business rather than an entire business or 'enterprise' which may include several separate places of business." 29 C.F.R. § 1602.9(a). The regulations explain, however, that "unusual circumstances may call for two or more distinct physical portions of a business enterprise being treated as a single establishment. For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions." 29 C.F.R. § 1602.9(b). The word "establishment" is to be given a broad interpretation. *Brennan v. Goose Creek Consolidated Independent School District*, 519 F.2d 53, 57 (5th Cir. 1975).

In *Brennan*, the leading Fifth Circuit case interpreting the meaning of "establishment" in the EPA context, the plaintiffs were female janitors employed by a school district that had thirteen elementary schools. The plaintiffs represented employees of eleven of the schools, and they argued that the school district should be treated as a single establishment. The defendants countered that the Court should consider each individual school as a separate establishment. The Fifth Circuit upheld the trial court's decision to treat the school district as a single establishment. The Court of Appeals noted that "the central administration of the school district hired the janitors, determined their wages, assigned them to the school building in which they were to work, and sometimes switched their assignments from one building to another.... Finally ... the janitors' daily duties [were] controlled to a large extent by the central administrators [and] do not differ from building to building." *Id.* Following the Fifth Circuit's decision in *Brennan*, our

5

sister courts, when defining what constitutes an "establishment," consider "evidence of centralized control of job descriptions and salary administration, standardization of wage rates across locations, similarity of operations at the separate locations, and interchangability of job assignments and functions." *Perales*, 2005 WL 2367772, at *4.

Defendant, in support of its position that Plaintiffs' sales region should be considered the relevant establishment, present an affidavit from Susan Roberts, Auxilium's Vice President of Human Resources. According to Roberts, MSCs are "divided and work in a particular region and are supervised by a Regional Sales Director based on their region." It is the Regional Sales Director, with input from the Areas Sales Director and Human Resources, who sets the MSC salary for the employees in her division.

Roberts' Affidavit, while helpful to Defendant's position, is ultimately too ambiguous for the Court to conclude, as a matter of law, that Plaintiffs' sale region should be considered their "establishment" for EPA purposes. Roberts states that the Area Sales Director and the central Human Resources Department had some role in determining MSC salaries. Depending on how broad or narrow their roles are in the process, this could mean that MSC salaries are largely controlled by the Area supervisor or by the Human Resources Department. Additionally, Roberts, in outlining the MSC responsibilities, implies that the position's description was controlled by the central Human Resources Department and that the position was similar across different sales regions. The Court cannot conclude that Plaintiffs' sales region, and not their sales area, should be considered the "establishment" for determining their EPA comparators.

### C. FLSA Exemption

Defendant next argues that it did not violate the FLSA by failing to pay Plaintiffs overtime. Defendant contends that Plaintiffs should be considered "outside salespeople" and are

6

therefore exempt from the terms of the Act. Plaintiffs respond that they did not act as salespeople but only engaged in promotional work.

The FLSA provides that "no employer shall employ any of his employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Outside salespeople, as defined by the Department of Labor, are specifically exempted from this provision. 29 U.S.C. § 213(a)(1). The Department of Labor defines an "outside [salesperson]" as any employee who (1) is employed for the purpose of and who is customarily and regularly engaged away from his employer's place of business in (a) making sales or (b) obtaining orders or contracts for services or for the use of facilities, and (2) does not perform work other than this for more than twenty percent of the hours worked by nonexempt employees of the employer." 29 C.F.R. § 541.5.

An employer claiming an exemption bears the burden of proving that the exemption is valid. *Heidtman v. County of El Paso*, 171 F.3d 1038 (5th Cir. 1999). In light of the FLSA's broad remedial aims, the exemptions from the FLSA's coverage must be narrowly construed against the employers seeking to assert them. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). The employer must prove that the employee falls "plainly and unmistakably within the terms and spirit" of the exemption. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). The inquiry into an employee's exempt status is "intensely factbound and case specific." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir.1990).

The FLSA defines "sale" or "sell" as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). The Department of Labor

regulations distinguish non-exempt promotional work as that which is "incidental to sales made, or to be made, by someone else ...." 29 C.F.R. § 541.503(a).

In *Amendola v. Bristol-Myers Squibb Co.*, the Southern District of New York recently considered whether pharmaceutical representatives should be considered as performing either promotional or sales work. 558 F.Supp.2d 459 (S.D.N.Y. 2008). The plaintiffs in that case were pharmaceutical representatives ("PR") working for Bristol-Myers Squibb ("BMS"). Like Plaintiffs in the instant case, the PRs worked from their own homes, received a salary as well as incentive compensation, and did not record the hours that they worked. The PRs' duty was to promote BMS products to physicians, hospitals, clinics, and medical institutions. The BMS District Managers supervised the PRs by joining them on their calls once a month. BMS provided the PRs with the list of providers who they should contact, but the PRs had flexibility in determining their daily schedules. A group of PRs sued BMS, requesting unpaid overtime, and the company responded that the PRs should be considered outside salespeople.

The trial court, analyzing the distinction between "promotional" and "sales," found that the PRs were not to be considered outside salespeople. The court concluded that "influencing physicians to prescribe BMS drugs to patients or even obtaining non-binding commitments from the physicians to do so does not constitute a "sale, exchange, contract to sell, consignments for sale, [or] shipment for sale." *Id.* at 470-471. The court described its conclusion as "unsurprising" because BMS agreed that the medical providers did not purchase BMS products from PRs and that federal law prohibited PRs from selling pharmaceuticals products.

The Court finds the reasoning of *Amendola* to be persuasive; however, the parties have not presented enough facts regarding Auxilium's business model for the Court to conclusively

hold that the outside sales exemption does not apply.[1] While Auxilium has presented company documents describing the duties of MSCs, these documents do not indicate that MSCs actually engaged in selling Testim as opposed to promoting it. It is quite possible that the MSCs promoted Testim incidental to Auxilium's actual sale of the product. The Court cannot conclude, as a matter of law, that Plaintiffs should be classified as outside salespeople.

### D. Retaliation Claim

Defendant also argues that Plaintiffs could not assert an EPA retaliation claim on behalf of other similarly situated MSCs who have not been named. Plaintiffs, who did not mention this argument in their responsive briefing, appear to concede this point. This portion of Defendant's Motion is therefore granted.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Partially Dismiss or, in the Alternative, For Partial Summary Judgment is **DENIED** as to Plaintiffs' FLSA and EPA claims. Defendant's Motion is **GRANTED** as to Plaintiffs' retaliation claim for similarly situated MSCs.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 27th day of February, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[1] Defendant cites three recent cases from federal district courts in California which hold that pharmaceutical representatives were engaged in sales. As the *Amendola* court explained, these cases were all decided under California's Labor Code instead of the FLSA. 558 F.Supp.2d at 471. Additionally, the California courts applied a balancing test created for drivers who engage in both sales and other incidental work instead of considering 29 C.F.R. 541.503(a), which deals specifically with sales versus promotional work. *Id.* at 471-472. Finally, the California cases did not recognize that FLSA exemptions must be narrowly construed against employers. *Id.* at 472.

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**